## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

DONALD ANDERSON                                    CIVIL ACTION

VERSUS                                                   NO: 10-0293

NEIL D. OSTER, ET AL.                         SECTION: "C" (1)


### ORDER AND REASONS[1]

Before the Court is Defendants' Motion for Summary Judgment.  (Rec. Doc. 49). Plaintiff opposes the motion.  (Rec. Doc. 56).  Having reviewed the record, motions of counsel, and the law, the motion is GRANTED for the following reasons.


### I.  Background

There is general agreement as to the factual events underlying this lawsuit.  In the early hours on September 27, 2009, Defendant Neil Oster awoke to noises coming from his rear shed. (Rec. Doc. 56-5 at 4).  As he approached the source of the disturbance, he saw a 45-50 year old black man rummaging through his shed.  *Id.*  According to Officer Scott Nelson–the investigating police officer that night–Oster startled the perpetrator who then fled the scene by jumping over an adjoining fence, leaving behind a bicycle.  *Id.*  At approximately 1:50 a.m., Oster reported the residential burglary to the police. *Id.*  Soon thereafter, Officer Dave Chaplain, a crime scene technician, examined the crime scene, discovering no other evidence of the crime, such as fingerprints, except for the bicycle.  *Id.*; (Rec. Doc. 49-5 at 15).  Neither Officer Stephen Abadie, Officer David Deroche, nor Sheriff Newell Normand were involved in the investigation this night.  (Rec. Doc. 49-5 at 9, 12);  (Rec. Doc. 49-1 at 4).

---

[1] Sami Dudar, a third-year law student at the University of Georgia School of Law, assisted in the drafting of this order.

Five days later, on October 2, 2009, Oster reported to the Jefferson Parish Sheriff's Office ("JPSO") that he had spotted the alleged perpetrator, Anderson, "riding a bicycle in front of the Winn-Dixie" near Jefferson Highway.  (Rec. Doc. 49-5 at 6).  Oster then followed Anderson until New Orleans Police Department ("NOPD") officers detained him.  *Id*.  At that point, the NOPD contacted Officer Abadie and informed him of the preceding events.  (Rec. Doc. 49-5 at 9).  Officer Abadie then requested that the NOPD send Oster to the Jefferson Parish Sheriff's Office Criminal Investigations Bureau in Harvey, Louisiana, so that he could take Oster's statement.  *Id.* at 10.

After briefly reviewing the September 27 police report, Officer Abadie recorded Oster's statement for use in a subsequent arrest warrant application.  *Id*.  While not contradicting the police report on any point, Oster's statement added three details, namely that the perpetrator: (1) held Oster up with a gun, (Rec. Doc. 56 at 4); (2) said "What's up?" to Oster, *id*.; and (2) wore glasses (Rec. Doc. 49-5 at 2).

Officer Abadie next produced a photographic lineup, containing a 2005 mug shot of Anderson, without glasses, among five other photographs of men with features similar to Anderson's.  *Id*. at 10.  Oster positively identified Anderson as the perpetrator.  *Id*.

That same day, Officer Abadie applied for an arrest warrant for Anderson, including only Oster's statement and his positive identification of Anderson.  *Id*. at 6-7.  Upon review of Officer Abadie's application, the Criminal Commissioner for the 24th Judicial District Court issued a warrant for Anderson's arrest.  *Id*. at 8.  Acting upon this warrant, Officer Deroche took Anderson into custody for booking at Jefferson Parish.  *Id*. at 12.  After spending three months in jail, Anderson was found not to have been the perpetrator and was released.  (Rec. Doc. 56 at 3).

On February 2, 2010, Anderson filed 42 U.S.C. § 1983 claims in the United States District Court for the Eastern District of Louisiana against Oster, Sheriff Normand, Officer Deroche, Officer Abadie, ABC Insurance Carriers, and XYZ Insurance Carriers for injuries resulting from false arrest.[2]  (Rec. Doc. 1).

On January 28, 2011, Defendants Sheriff Norman, Officer Deroche, and Officer Abadie moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that Anderson cannot show the existence of a genuine issue of material fact and that they are entitled to judgment as a matter of law.  (Rec. Doc. 49).

## II. Law and Analysis

### A.  Standard of Review

Summary judgment is proper where neither the pleadings nor the evidence demonstrate the existence of a genuine issue of material fact, entitling the movant to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989).  The substantive law determines a fact's materiality.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The movant bears the initial burden "of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact."  *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[2] Defendants correctly point out that although Anderson has listed "numerous causes of action under which he seeks recovery, the plaintiff's basic claim [against Normand, Deroche, and Abadie on this motion] is that he was falsely arrested."  (Rec. Doc. 49-1); *see* (Rec. Doc. 1 at 10) ("non-exclusive" list of civil and constitutional violations).

After the movant has carried its initial burden, the burden shifts to the nonmovant to point out such evidence in the record that establishes the existence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24; *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998). This burden entails "more than simply show[ing]...some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather the nonmovant has the burden of putting forth evidence that would support a finding of the material factual issue in its favor. *Anderson*, 477 U.S. at 249.

In its summary judgment analysis, a court is to consider all of the evidence in a light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court will resolve factual controversies in favor of the nonmovant, "but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). A court will consider neither conclusory allegations nor unsubstantiated assertions in assessing whether the nonmovant's burden is satisfied. *Id.*; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). If the nonmovant fails to show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Herrera,* 862 F.2d at 1157.

**B.  Liability Under 42 U.S.C. § 1983**

Anderson asserts § 1983 claims against Defendants Sheriff Normand in his official capacity as Sheriff for the JPSO, and officers Abadie and Deroche in their personal capacity acting under color of state law.  (Rec. Doc. 1 at 1-2).

A plaintiff may assert a claim for the violation of a constitutional right under § 1983 against individuals acting "under color of state law."  42 U.S.C. § 1983 (2011); *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir. 1988) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Depending on a defendant's personal or official capacity, a court must apply different standards of liability under § 1983.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (noting "the distinction between personal- and official-capacity suits").  Where a plaintiff sues a defendant in his or her personal capacity, a plaintiff must "'show that the official, acting under color of state law, caused the deprivation of a federal right.'"  *Id*. (quoting *Ky. v. Graham*, 473 U.S. 159, 166 (1985)).

In contrast, suits against individuals in their official capacities "should be treated as suits against the State…'of which an officer is an agent'" *Id*. (quoting *Graham*, 473 U.S. at 165. Thus, to establish that the governmental entity is liable under a § 1983 claim, "the entity's 'policy or custom' must have played a part in the violation." *Graham*, 473 U.S. at 166 (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)).

There are three methods by which a plaintiff may demonstrate an official policy to cause constitutional injury: (1) the officer or entity involved establishes "a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (quoting *Bryan Cnty. Comm'r v. Brown*, 520 U.S. 397, 417 (1997); (2) without announcing a policy, "the policymaker itself violated a constitutional right," *id*.; and (3) without affirmatively acting, the policymaker's "need to take some action to control the agents of the local governmental entity 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymak[r]…can reasonably be said to have been deliberately

5

indifferent to the need.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (alteration in original); *Brown*, 520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice.").

Thus, as to officers Abadie and Deroche in their personal capacity, Anderson has the burden of putting forth evidence demonstrating that these officers deprived him of a federal right.  As to Sheriff Normand, because the Sheriff took no personal part in Anderson's arrest and because Anderson cites to no affirmative policy announced by the Sheriff, Anderson must produce evidence that the Sheriff's failure to act was so obvious and likely to cause constitutional violations, that it can reasonably be said that Sheriff Normand was "deliberately indifferent to the need."

## C.  § 1983 False Arrest Claim

The claim at issue on Defendants' summary judgment motion is Anderson's § 1983 false arrest claim.  (Rec. Doc. 49-1 at 5).  While "[t]he Constitution does not guarantee that only the guilty will be arrested," *Baker v. McCollan*, 443 U.S. 137, 145 (1979), the Fifth Circuit recognizes that a plaintiff may allege a § 1983 claim that he was falsely arrested for lack of probable cause.[3]  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right.").

---
[3]

 An additional requirement to the claim of false arrest is that the plaintiff establish a "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994).  As the parties do not contest that Anderson was released for not having been the perpetrator, this Court only concerns itself with the remaining requirements of the § 1983 false arrest claim.

An officer has probable cause to arrest if the "'facts and circumstances within the officer's knowledge'" at the time of the arrest "'are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed…an offense.'" *Club Retro*, 568 F.3d at 204 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "Probable cause to arrest exists 'where the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Preston*, 608 F.2d 626, 632 (5th Cir. 1979) (quoting *Draper v. United States*, 358 U.S. 307, 313 (1964)). In determining the existence of probable cause, a court takes into consideration the totality of the circumstances within a police officer's knowledge at the time of the arrest. *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000); *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).

### D. Qualified Immunity

In response to Anderson's false arrest claim, officers Abadie and Deroche move for summary judgment based, *inter alia*, on the defense of qualified immunity. (Rec. Doc. 49-1 at 6). While not available to government officials sued in their official capacity, qualified immunity is an affirmative defense to a § 1983 claim that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hafer*, 502 U.S. at 25 ("While the plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity

defenses such as objectively reasonable reliance on existing law.").  This defense "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Police officers are entitled to assert such qualified immunity.  *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988).

When a defendant moves for summary judgment on the basis of qualified immunity, there are two issues a court must address: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct."  *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009).

In resolving the second issue, the "inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."  *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).  "This means that '[e]ven law enforcement officials who reasonably but mistakenly [commit a constitutional violation] are entitled to immunity.'"  *Id.* (quoting *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (alteration in original)).  "[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed…."  *Blackwell v. Barton*, 34 F.3d 298, 304 (5th Cir. 1994) (quoting *Hunter*, 112 S. Ct. at 537).

"To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'"  *Glenn*, 202 F.3d at 736 (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir.1991)). For example, qualified

immunity is unavailable to a police officer "if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles." *Geter*, 849 F.2d 1550 at 1559.

In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Court held that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.    In so holding, the Court recognized that courts at the district and appellate levels "are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Id.* at 821.

Pursuant to *Pearson*, this Court assesses each officer's defense in turn to determine whether or not there exists a genuine issue of material fact that officers Abadie and Deroche acted reasonably under clearly established law and in the situations, in which they found themselves.

### 1.  Officer Abadie

In support of his qualified immunity defense, Officer Abadie asserts that his belief that probable cause existed was reasonable because he relied on Oster's voluntary statement of his eyewitness encounter with the perpetrator and his positive identification of Anderson from a photographic lineup.  (Rec. Doc. 49-1 at 6).  Furthermore, Officer Abadie points out that Anderson has not demonstrated that Officer Abadie had reason to believe Oster was being untruthful or that Officer Abadie knew he was submitting a warrant "that contained false, misleading, or even questionable information."  (Rec. Doc. 58-2 at 2).

Officer Abadie is entitled to qualified immunity if a reasonable officer, in his position and with possession of the facts and circumstances as he knew them, could believe that probable cause existed to arrest Anderson.  This Court reviews a decision to issue an arrest warrant and the "officer's decision to seek an warrant, by evaluating the facts available to the officer at the time he submitted the application."  *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 404 (5th Cir. 1989).

In examining the arrest warrant application, Officer Abadie based his belief that probable cause existed on the following facts, derived primarily from his interview with Oster:  (1) Oster was a victim-eyewitness to a black male burglar, 45-50 years old, who held him at gunpoint and said "What's up?" to him before fleeing; (2) a white bicycle lay on Oster's property, presumably belonging to the burglar; (3) five days after the burglary, Oster spotted Anderson riding a bicycle, and, believing him to be the burglar, called the JPSO to report that he had found the perpetrator five days ago; (4) Oster then followed Anderson until the police detained him; and (5) Oster positively identified Anderson in a photographic lineup among five other men with similar features.  (Rec. Doc. 49-5 at 5-7).

The parties do not contest these facts.  Rather, in opposing summary judgment on qualified immunity grounds, Anderson contends that Defendants should have known that they lacked probable cause to support or execute a warrant for Anderson's arrest.  (Rec. Doc. 56 at 3). Anderson argues that Officer Abadie accepted "without further inquiry, Mr. Oster's questionable memory of the events that transpired on September 27."  *Id*. at 5.  Anderson bases his assertion that Oster's memory was "questionable" because a comparison of Oster's statement with the police report demonstrates "serious discrepancies in the evidence."  *Id*. at 4.  These "serious discrepancies" amount to three things detailed in Oster's statement, but not mentioned in the

police report: (1) the perpetrator's use of a gun; (2) the perpetrator saying "What's up?" to Oster; and (3) the perpetrator wearing glasses. *Id.* at 4-5. Second, Anderson claims that the photographic lineup identification was tainted and could not be used to support the existence of probable cause because Oster followed Anderson for "half the day" after spotting him. *Id.* at 5. In short, Anderson argues that probable cause does not exist because Officer Abadie should have considered that: (1) Oster an unreliable witness; and (2) dismissed his positive identification because Oster picked Anderson out of the lineup because he followed him for several miles and not because Anderson was the burglar who held him at gunpoint. (Rec. Doc. 56-2 at 7).

For the following reasons, this Court finds that Officer Abadie acted reasonably in determining that probable cause existed to arrest Anderson. First, Anderson's argument that, in comparing the police report to the statement, there exist "serious discrepancies" of which a reasonable police officer would have taken notice is unpersuasive. The police report is not in contradiction with Oster's later statement. Oster's statement simply elaborates on points, on which the report is silent, possibly because the report was written by a busy investigative officer who was detailing the events of an incident that occurred at around 1:50 a.m. (Rec. Doc. 56-5 at 4). Such reports should not be expected to reflect the level of detail of a recorded statement. *Id.*

Second, this Court finds that it was reasonable for Officer Abadie to base his probable cause determination on Oster's statement as a victim-eyewitness to the burglary. In *United States v. Blount*, 123 F. 3d 831 (5th Cir. 1997), the *en banc* Court held that under the "totality of the circumstances" standard, "absent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration." *Id*. at 835; *see id*. at 836 (citing *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983), for the proposition

11

that "when an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case"); *United States v. Bell*, 457 F.2d 1231, 1238-39 (5th Cir. 1972) (holding that there is no requirement that an application for a warrant attest to the credibility of an identified bystander or victim-eyewitness to a crime because "such observers are seldom involved with the miscreants or the crime" and that "[e]yewitnesses by definition are not passing along idle rumor"); *see also Ill. v. Gates*, 462 U.S. 213, 234 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the *event was observed first-hand*, entitles his tip to greater weight than might otherwise be the case.") (emphasis added).

Consequently, even if this Court assumes *arguendo* that the lack of those three details in the police report and the passage of five days time since the burglary will cast doubt on Oster's reliability as a witness, Officer Abadie was reasonable in not factoring these points into his probable cause analysis because he was not required to under *Blount*.  In *United States v. Phillips*, 727 F.2d 392 (5th Cir. 1984), the Court did not consider a wife's statements to be that of an "'eyewitness-bystander' who is not 'intimately involved with the person [ ] informed on'" because she recently quarreled with and left the defendant-husband. *Id*. at 397 (quoting *Bell*, 457 F.2d at 1238) (alteration in original).  Here, there is no similar threat to Oster's status as a victim-eyewitness because Oster had no relationship with Anderson before the current incident or even a separate motivation to accuse him.  *See United States v. Copeland*, 538 F.2d 639, 642 (5th Cir. 1976) (acknowledgment that witness father-in-law had "an axe to grind" with the defendant went to witness' "motivation in providing the tip…not necessarily lessen[ing] his credibility").  Thus, Oster is a victim-eyewitness who came to the police regarding a crime of

12

which he had personal knowledge. Because Anderson identifies no special circumstances that would suggest to Officer Abadie that Oster was being untruthful in making his statement, it was reasonable for Officer Abadie to rely on Oster's information in his arrest warrant application.

Even under Anderson's interpretation of the facts, a critical view of the police record would not necessarily have precluded the existence of probable cause–a requirement of false arrest–but only "may have [caused Officer Abadie to think] twice about relying on Mr. Oster's identification…."  (Rec. Doc. 56 at 5).  However, given the level of generality in the report regarding the suspect, a jury could certainly find Officer Abadie's justification reasonable: "The initial report didn't have the evidence to follow up on."  (Rec Doc. 56-2 at 10).

Finally, as to the photographic lineup, Anderson's argument that Officer Abadie acted unreasonably is unpersuasive.  Anderson only offers the unsubstantiated allegation that "this photo array was obviously tainted by [Oster's] prior contact and should not have been relied upon."  (Rec. Doc. 56 at 5).  Even accepting *arguendo* that the photographic lineup was suggestive or tainted, Anderson has presented no evidence that it was Officer Abadie's intention to procure a false identification or that the situation did not reasonably call for a photographic lineup.  As Officer Abadie explained, the purpose of the lineup is to establish that the police and the witness are "talking about the same person," particularly "when a witness is unfamiliar with the suspect."  (Rec. 56-2 at 5).  Thus, at a minimum, the photographic lineup served the purpose of demonstrating that Oster could remember a face that he allegedly had seen during a burglary and another time as he was following the alleged perpetrator.  That he turned out to be incorrect does not negate Officer Abadie's reasonable reliance.

Furthermore, while Anderson claims that Oster "testified that he picked [Anderson] out because he had just followed him for about two miles," (Rec Doc. 56-2 at 7), Officer Abadie

stated that Oster "picked [Anderson] out [of] the lineup because he identified him as the guy who put a gun in his face." *Id.* In fact, after Oster positively identified Anderson, Officer Abadie verified that "[h]e's the guy who committed the burglaries, as well as held you up by gun point, when you entered and confronted your shed...." (Rec. Doc. 49-5 at 3). Anderson has not identified any evidence that shows that Officer Abadie had knowledge that Oster's photographic identification was based on any other factor, and it is only the knowledge that the officer had at the time that a reviewing court is to consider. *Levine*, 80 F.3d at 132.

Accepting Anderson's evidence that Officer Abadie acted in haste in reviewing the police, (Rec. Doc. 56-2 at 10) (noting that Officer Abadie received the report as he was "leaving the office"), Anderson has not shown that it was Officer Abadie's deliberate intent not to scrutinize the police report and assemble a suggestive photographic lineup in order to procure an arrest warrant and falsely arrest Anderson. To the contrary, the evidence most favorable to Anderson indicates that Officer Abadie acted reasonably in believing that probable cause existed. Without demonstrating the existence of a genuine issue of material fact that Officer Abadie knowingly intended to violate clearly established law, Anderson cannot negate Officer Abadie's qualified immunity defense.

2. Officer Deroche

As an officer who merely relied on and executed a valid arrest warrant, Officer Deroche argues that he is protected from Anderson's § 1983 false arrest claim on the grounds of qualified immunity. (Rec. Doc. 49-1 at 6). A police officer cannot be held liable in an individual's subsequent § 1983 suit for false arrest if that officer arrested that individual either with probable cause or pursuant to a valid arrest warrant. *Mundy v. Ga.*, 586 F.2d 507, 508 (5th Cir. 1978);

*Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest."). A magistrate's "ultimate probable cause decision should be paid great deference by reviewing courts." *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965). On the other hand, courts will give no deference to "a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 898 (1984). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable…will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).

Because this Court has already determined that Officer Abadie acted reasonably in believing that probable cause existed to arrest Anderson, Officer Deroche is entitled to qualified immunity for reasonably relying on the arrest warrant that was issued based on Officer Abadie's probable cause determination. Furthermore, Anderson has neither alleged that Officer Deroche exceeded the scope of the arrest authorization nor that he was abused by him and the facts do not evince that any abuse occurred. Thus summary judgment is proper in favor of Officer Deroche and he is entitled to judgment as a matter of law.

### E.  Official Capacity Claim

Acknowledging that Sheriff Normand is not susceptible to suit under a *respondeat superior* theory, Anderson has sued Sheriff Normand in his official capacity to assert a § 1983 claim under a *Monell* theory that there existed a "a departmental or agency-wide policy or custom" in the JPSO to deprive individuals of their constitutional rights. (Rec. Doc. 56 at 6).

From Anderson's motion, it appears that Anderson asserts two such policies or customs.  First, Anderson alleges that, based on Officer Abadie's deposition, there exists a JPSO "policy of automatic arrest based on witness identification alone" that "is bound to lead to false arrests and…long periods of unnecessary incarceration."  *Id.*  Second, based on Officer Chaplain's investigation of the burglary, Anderson alleges that it is JPSO policy for crime scene technicians to employ faulty and incomplete fingerprinting techniques due to underfunding and a failure to supply proper equipment.  *Id.* at 7.

In their summary judgment motion, Defendants argue that Anderson has failed to show that: (1) the custom of automatic arrest that Anderson alleges, in fact, exists; (2) the custom alleged causes constitutional injury; and (3) the fingerprinting techniques used were inadequate or that a constitutional right was violated because the police recovered no fingerprints on the crime scene.  (Rec. Doc. 58-2 at 5-6).

As stated above, because Anderson has produced no evidence that Sheriff Normand announced any of the above customs or policies alleged, Anderson bears the burden to show that there exists a genuine issue that these policies existed and that the Sheriff's failure to act to correct the likely constitutional injury resulting from these alleged policies constituted deliberate indifference.

"Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability."  *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Bryan Cnty.*, 520 U.S. at 407).  "[E]ach and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional."  *Id.* at 579-80.  Apart from the culpability requirement–here, deliberate

indifference–a *Monell* plaintiff must establish "a direct causal link between the municipal policy and the constitutional deprivation. *Id*. at 580. Specifically, "the plaintiff must show that the municipality has a policy or custom that caused [the] injury." *Parm v. Shumate*, 513 F.3d 125, 142 (5th Cir. 2007). A court will "not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993). "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy" that is required of § 1983. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).

1. Automatic Arrest Policy

This Court first examines Anderson's alleged "policy of automatic arrest based on witness identification alone." (Rec. Doc. 56 at 6). In supporting the existence of such a policy, Anderson relies on two pieces of evidence: (1) Officer Abadie's testimony that "the victim saw the suspect on the street, identified him; that's enough," (Rec. 56-2 at 5); and (2) Officer Abadie's brief review of the police report. (Rec. Doc. 56 at 6).

This Court finds Anderson's evidence of a policy of "automatic arrest based on automatic witness identification alone" insufficient under the applicable standard. First, with respect to this alleged policy, Anderson relies only on Officer Abadie's statements and what he did on October 2, not other officers or about statements regarding JPSO in general. *See id*. at 5 (question posed to Officer Abadie: "Then tell me how you followed up on this and then what happened."). Furthermore, when asked about whether the actions taken by the police in this case were common practice, Officer Abadie stated that "[e]very case is different," emphasizing later that "[t]his case [was] different." (Rec. Doc. 56-2 at 6). Above all, Anderson cites to no prior

instances of false arrest within the JPSO, but merely assumes that they will occur with such constancy solely based on his single experience.  These are the sort of "[i]solated violations" and incidental encounters with a government entity that do not establish deliberate indifference on behalf of the Sheriff as policymaker.  *Campbell*, 43 F.3d at 977; *Colle*, 981 F.2d at 245.

Second, assuming Officer Abadie made a statement that it is departmental policy to generate arrest warrant applications solely on the basis of eyewitness-victim identification, Anderson has not shown evidence to support the more egregious allegation that such applications will be generated  "regardless of any contradictory evidence that may be present." (Rec. Doc. 56 at 6).  Not only did Officer Abadie never make such a statement, but Officer Abadie made clear that, in the circumstances of this case, he didn't rely on an eyewitness-victim's accusation of a person on the street alone in his warrant application, but produced a photographic lineup from which the witness positively identified a suspect.  (Rec. Doc. 56-2 at 6).  Moreover, as was pointed out earlier, the "contradictory evidence" that Anderson relies on, namely the police report and Oster's recorded statement, is not contradictory.

Finally, Anderson has not demonstrated that submitting an arrest warrant application based on eyewitness-victim identification is an unconstitutional practice. Instead, Anderson simply states that this policy "is bound to lead to false arrests and, as in this case, long periods of unnecessary incarceration."  (Rec. Doc. 56 at 6).  Once again, Anderson provides no evidence other than the facts of the instant case, from which he generalizes hypothetical false arrest claims.  As noted in *Bell*, victim-eyewitnesses are held to a higher level of reliability than that of the anonymous informant.  457 F.2d at 1238-39.  Furthermore, arrest warrant applications are screened by neutral and detached magistrates to determine whether probable cause exists before

an arrest warrant is issued.  *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (quoting *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972)).

In sum, this Court finds that Anderson has not carried his summary judgment burden to show that (1) there exists a JPSO policy of automatic arrest based solely on victim-eyewitness identification without taking into consideration contrary evidence that (2) results in repeated false arrest violations, such that it can be said Sheriff Normand has acted with deliberate indifference to the rights of individuals.

### 2.  Policy of Underfunding Crime Scene Technician

Anderson's second policy allegation is that JPSO underfunds crime scene technicians and limits their ability to investigate whole crime scenes, resulting in "faulty and incomplete fingerprinting techniques."  (Rec. Doc. 56 at 7).  Anderson bases this allegation again on Officer Abadie's testimony–despite the fact that he is not a crime scene technician, (Rec Doc. 56-2 at 14)–regarding the inability of a crime scene technician to "process the whole [crime] scene," *id*. at 15, and Officer Chaplain's inability to lift any fingerprints from the crime scene in question. (Rec. Doc. 56 at 7).  Anderson alleges that he would not have been arrested had Officer Chaplain been able to lift fingerprints from the crime scene.  *Id*. at 6.

This Court cannot agree with Anderson's theory for several reasons. Similar to his theory of automatic arrest, Anderson rests his allegation that a policy existed to underfund crime scene technicians on the one underlying incident and Officer Abadie's testimony.  Assuming *arguendo* that Officer Chaplain violated a constitutional right through his inability to lift fingerprints from the crime scene, this one instance does not amount to the "often repeated constant violations that

constitute custom and policy" that Anderson must establish under § 1983. *Campbell*, 43 F.3d at 977.

Furthermore, Officer Abadie's testimony does not establish the existence of a policy to underfund. Rather, Officer Abadie made a generalized comment of the need to economize the breadth of a crime scene investigation based on the facts that are known to the crime scene investigator, as opposed to conducting broad investigations. *See id.* ("I don't assume anything [on a crime]…Am I to process the whole block? I can't do that. We don't have the time or the resources to do those things…we go on the facts."). (Rec Doc. 56-2 at 15).

Assuming further that Anderson has shown that the JPSO has a policy to underfund crime scene technicians to the point where they cannot process whole crime scenes, Anderson makes no showing that this policy constituted deliberate indifference that directly caused a violation to a constitutional right. Anderson only states his conviction that "had viable fingerprints been lifted from the scene of the burglary at issue, [Anderson's] arrest and subsequent incarceration would not have occurred." (Rec. Doc. 56 at 6).

While an officer may not intentionally conceal exculpatory evidence, *Geter*, 849 F.2d 1550 at 1559, which arguably could occur if police deliberately withheld funds from investigators in order to preclude them from adequately checking for fingerprints, Anderson produces no evidence that suggests with any degree of certainty that JPSO's fingerprinting detection techniques are so inadequate that they will never discover exculpatory evidence or that fingerprint detection would exonerate a suspect in light of other inculpatory evidence. Instead, Anderson faults Officer Chaplain's investigation for not finding fingerprints on objects that the burglar touched without establishing that, were other reasonable methods employed, the police would have located fingerprints. It does not follow that because there exist other devices which

20

detect fingerprints that Officer Chaplain's investigation exceeded "'simple or even heightened negligence'" for not employing them. *Piotrowski*, 237 F.3d at 579.  As Officer Chaplain stated, "there's [sic] a thousand different reasons" for which an investigator cannot lift fingerprints from a surface.  (Rec. Doc. 56-7 at 5).  Finally, police do not even require fingerprints in order to establish probable cause to arrest because probable cause is a totality of the circumstances inquiry.  *United States v. Cherry*, 50 F.3d 338, 341 (5th Cir. 1995); *see Gates*, 462 U.S. at 233 (noting that the totality of the circumstances approach permits that a deficiency in probable cause belief "may be compensated for…by a strong showing as to" another piece of evidence).

In sum, this Court finds that Anderson has not carried his summary judgment burden and Sheriff Normand is entitled to judgment as a matter of law on Anderson's second policy allegation because Anderson has neither shown (1) the existence of a JPSO policy to underfund crime scene technicians in order to cause repeated false arrests, nor (2) that the investigative techniques of the JPSO exceed simple negligence, let alone constitute deliberate indifference to a constitutional right.

### III.  Conclusion

Accordingly,

IT IS ORDERED that Defendants' motion for summary judgment (Rec. Doc. 49) is GRANTED as to the false arrest claims against Defendants Officer Abadie and Officer Deroche.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (Rec. Doc. 49) is GRANTED as to the policy allegations against Defendant Sheriff Normand in his official capacity.

New Orleans, Louisiana, this 24th day of June, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE